46 F.3d 1122
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Francis BYRD, Petitioner-Appellant,
v.
Sewall B. SMITH, Warden; Attorney General for the State of
Maryland, Respondents-Appellees.
 No. 93-6939.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 20, 1994.
Decided Jan. 11, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-93-1382)
 Andrew Radding, Thomas J. Althauser, Blades & Rosenfeld, P.A., Baltimore, MD, for Appellant. J. Joseph Curran, Jr., Atty. Gen. of Maryland, Annabelle L. Lisic, Asst. Atty. Gen., Office of the Atty. Gen., Baltimore, MD, for Appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, HAMILTON, and WILLIAMS, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 Francis Byrd appeals from the district court's order denying relief on his 28 U.S.C. Sec. 2254 (1988) petition in which he challenged his 1979 Maryland state court convictions for first degree murder, robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. Byrd is currently serving a life sentence for the murder conviction along with a concurrent fifteen-year sentence for the handgun offense. At sentencing, his robbery conviction was merged into the murder conviction.
 
 
 2
 The following evidence was adduced at Byrd's trial. On the early morning of June 5, 1979, Charles Henson was shot to death in an apartment building at 4002 Oakford Avenue in Baltimore, Maryland. Officer Robert Krajewski testified that he found Henson's body "kneeling with his head up against the basement door and he had what appeared to be a bullet hole in the back of his left ear." Mrs. Augustine Manley testified that early that morning, at approximately 1:00 a.m., she had accompanied Henson (a known drug dealer) to apartment D, on the second floor of 4002 Oakford Avenue, and that they brought with them a red and blue plaid suitcase containing approximately nineteen pounds of marijuana and two and a half ounces of cocaine. Byrd arrived at the apartment a short time later and purchased $50 worth of cocaine from Manley.* A few minutes later, Byrd indicated that he wished to purchase more cocaine but had no more money. According to Manley, Byrd made a telephone call and said afterward that he was "going to go try and get some money so that he could buy some more." Byrd left the apartment.
 
 
 3
 After thirty-five to forty minutes had passed, Byrd returned to the apartment. Manley testified that she saw Byrd take a gun out from underneath his shirt and show it to Henson and that she then witnessed a conversation between Byrd and Henson, in which Henson tried to persuade Byrd to trade his (Byrd's) handgun for more cocaine, but that Byrd refused. At that point, an unidentified man (apparently an acquaintance of Byrd's) arrived at the apartment. Manley then left with Henson, Byrd, and the unidentified man. Henson had the suitcase containing the marijuana; Manley had the cocaine in her pocketbook. The four began descending the stairway with Henson, Byrd, and the third male in front of Manley. Manley testified that Henson was slightly in front of, and in between, the other two men. Manley, however, had forgotten her belt and turned to go back to the apartment to retrieve it. Before she got there, she heard two shots fired from the downstairs hall. She ran into the apartment, without looking back, and locked the door.
 
 
 4
 Daniel Barber, a maintenance worker, testified that he heard two or three shots fired at approximately 5:30 a.m. that morning. Barber was behind the building setting out trash at the time. He testified that he came around to the front of the building and saw two men running up the street, one carrying a black suitcase.
 
 
 5
 Finally, police officer Jessie Ewing testified that he overheard a conversation between Byrd and a female companion in which Byrd said, "I'll be able to beat this charge cause that girl that testified that she picked my picture out down Central Police Station, she won't be able to say that she saw me shoot the man, or shoot that dude, because she had gone upstairs to get her coat." Both Charles and Augustine Manley had identified Byrd from a looseleaf folder containing ninety-one photographs.
 
 
 6
 After exhausting his state remedies, Byrd filed this federal habeas petition raising the following claims: (1) that there was insufficient evidence to support the robbery conviction; (2) that the prosecutor's remarks during closing argument were unfairly prejudicial; (3) that the prosecution failed to disclose exculpatory material in violation of Brady v. Maryland, 373 U.S. 83 (1963); and (4) that both trial and appellate counsel were ineffective. From the district court's order denying relief on all of his claims, Byrd appeals.
 
 
 7
 A. Sufficiency of the evidence. Byrd claims the evidence was insufficient to support the robbery conviction because there was no testimony that the suitcase containing the marijuana was missing. Moreover, Byrd maintains that Barber testified that the color of the suitcase he saw carried by one of the two men running from the apartment building was black, whereas Mrs. Manley testified that the suitcase carried by Henson was red and blue plaid.
 
 
 8
 The standard of review for a claim of insufficiency of the evidence, in a Sec. 2254 proceeding, is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts established to those sought to be proven. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). In resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). Finally, determinations by a state court with respect to historical facts and inferences to be drawn from those facts are entitled to a presumption of correctness on federal habeas review. Sumner v. Mata, 449 U.S. 539, 546-52 (1981); 28 U.S.C. Sec. 2254(d).
 
 
 9
 In Byrd's second petition requesting post-conviction relief, the Maryland state court found that the evidence presented at his trial was sufficient to support a conviction for robbery. We agree and therefore affirm the district court's holding that the evidence was sufficient for a reasonable jury to have found Byrd guilty of robbery.
 
 
 10
 B. Prosecutor's comments during closing argument. In his closing argument to the jury, the prosecutor stated that "Charles Henson ... had been executed. He was forced to kneel with his head up against the pad locked basement door." Byrd's attorney objected and a bench conference took place off the record. Afterward, the prosecutor continued his closing argument with this statement:
 
 
 11
 As I discuss with you any testimony from the witnesses, I will be discussing with you what I believe that evidence should show to you and what I believe the evidence can infer to you.
 
 
 12
 A particular point, as an example, I submit that from the fact that Officer Krajewski found this victim kneeling with his head up against the basement door with a bullet hole in the top of his head and another one in the side of his neck, that when you put that evidence together with the autopsy that is in evidence ... that you can infer that Mr. Henson was in that kneeling position with his head up against the wall when he was murdered, and from that, ladies and gentlemen, I think that you can infer that there was no question that the person who shot him fully intended to kill Mr. Henson, and the reason that he did that was for the purpose of stealing his nineteen pounds of marijuana worth more than $8,000.
 
 
 13
 I think that, ladies and gentlemen, from Officer Krajewski's testimony, we can infer that Mr. Henson was forced to kneel in that position and was shot and died almost instantly after he was shot, remained in that position until Officer Krajewski found him and moved him for the purpose of trying to administer first aid to him.
 
 
 14
 Byrd's attorney did not renew his objection.
 
 
 15
 Byrd claims that there was no evidence that Henson had been forced to his knees before being shot and that the prosecutor's statements were so prejudicial as to deny him due process. In support of this claim, he included an affidavit from the Deputy Chief Medical Examiner for the State of Maryland in which she concluded that "it is impossible to say with a reasonable degree of medical certainty that Mr. Henson was on his knees at the time he was shot."
 
 
 16
 The Maryland state court, in denying Byrd's second petition for post-conviction relief, found that Byrd was not prejudiced by these remarks and, in any event, he had waived this claim by his failure to renew his objection or to ask for a curative instruction. Therefore, this claim is procedurally barred absent a showing of cause and prejudice or actual innocence. See Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989) (procedural bar applies when state court has found procedural default regardless of whether it has alternatively discussed merits, as long as court has explicitly invoked state procedural rule as a separate basis for decision).
 
 
 17
 Byrd cannot show that he was prejudiced because this claim is meritless. It is not enough that prosecutorial remarks are "undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986). The test is whether they "so infected the trial with unfairness that the resulting conviction is a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). This Court has held that "[w]hether improper argument by government counsel has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." Miller v. North Carolina, 583 F.2d 701, 706 (4th Cir.1978). Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984).
 
 
 18
 Here, the objectionable remarks were not completely unsupported by the evidence. Although there was no proof that Henson was, in fact, shot while kneeling, such an inference would be permissible given the position in which his body was found and the location of the bullet wounds. In addition, the prosecutor's comments were isolated and brief; and the trial court sustained Byrd's objection. Moreover, there was sufficient evidence to establish Byrd's guilt, regardless of any statements made by the prosecutor in his closing argument. Finally, as the state court noted, the posture of the victim was irrelevant to the crimes charged and the guilt or innocence of the defendant. Therefore, this claim is without merit.
 
 
 19
 C. Failure to disclose Brady evidence. Byrd claimed that, at his trial, it was first revealed that Charles Manley, who placed Byrd at the crime scene several hours before the murder, was uncertain of his identification. Byrd maintains that Manley's uncertainty as to the identification of Byrd constituted exculpatory evidence which should have been disclosed under Brady. However, our review of the trial transcript reveals that Byrd's characterization of this testimony as exculpatory is simply not correct. Manley testified that "out of everyone that was in the [photo identification book] that I looked at, out of every picture that I looked at, the picture that I fingered out [of Byrd], was the one that most closely resembled the guy that passed me that night." Therefore, this claim is meritless.
 
 
 20
 D. Ineffective assistance claims. Byrd alleged that his trial attorney was ineffective because he: (1) failed to give any reasons in support of his motion for judgment of acquittal; (2) failed to point out to the jury in his closing argument that the evidence of robbery was insufficient because the state had not proved that the suitcase was missing; (3) failed to point out in his closing argument that the only two people who could place Byrd at the scene of the crime (Augustine and Charles Manley) were both convicted felons who were at least as likely to have committed the crime; (4) failed to object to the prosecution's "repeated and blatant" mischaracterizations of the testimony of Daniel Barber; and (5) failed to renew his objection to the prosecution's claim that Henson had been forced to his knees and executed. Byrd also alleged that his appellate counsel was ineffective for failing to appeal his conviction based on the insufficiency of the evidence.
 
 
 21
 To state a claim of ineffective assistance of counsel, Byrd must show: (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668 (1984). None of Byrd's claims meet both prongs of Strickland.
 
 
 22
 Byrd's first claim that his attorney failed to give any reasons in support of his motion for acquittal is unsupported by the record. Byrd's second claim fails for lack of prejudice because the underlying claim (insufficiency of the evidence to support a robbery conviction) is meritless. Byrd's third claim is also meritless. The transcript reveals that his attorney did question both witnesses about their felony convictions. His failure to argue in closing that one of the Manleys committed the crimes was not error because such a claim would have been unsupported by the evidence introduced during the trial. Therefore, Byrd was not prejudiced.
 
 
 23
 Byrd's fourth claim regarding his trial attorney's performance is also without merit. During closing argument, the prosecutor stated that Barber had testified that he saw two young black males running up the street. From our review of the trial transcript, this was not an erroneous account of Barber's testimony. The prosecutor also stated that Barber saw a "red and black" suitcase. Barber actually testified that he had seen a "black" suitcase. These were insignificant misstatements by the prosecutor; Byrd's attorney was not ineffective for failing to object to them. In any event, the trial court provided a cautionary instruction to the jury prior to closing arguments:
 
 
 24
 In the course of their argument to you, I am sure counsel will be endeavoring to present the evidence to you as accurately as they can, but we are all human and it is possible that things that they tell you may differ from your recollection of the testimony. If that happens, you should rely on your own memory of what you hear and observe.
 
 
 25
 Therefore, this claim is meritless.
 
 
 26
 Byrd's final claim of ineffective assistance with respect to his trial attorney was that he failed to object to the prosecutor's claim that the victim had been forced to his knees and executed. Because Byrd's substantive claim on this issue is meritless, this claim fails for lack of prejudice. Similarly, Byrd's claim of ineffective assistance regarding appellate counsel's performance fails for lack of prejudice because the substantive claim (sufficiency of the evidence) is without merit.
 
 
 27
 Therefore, we affirm the district court's order denying relief on Byrd's claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process.
 
 AFFIRMED
 
 
 *
 Byrd's arrival at the apartment was corroborated by the testimony of Charles Manley, the estranged husband of Augustine Manley, who was outside the apartment and saw Byrd arrive by cab and enter the building