Carl MILLER, Artis P. McClain, and Larry Campanella Clark, Appellants,

v.

STATE OF NORTH CAROLINA, Appellee.

No. 78–6058.

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1978.
Decided Sept. 29, 1978.

William A. Reppy, Jr., Legal Research Program, Duke Law School, for appellants.

Richard N. League, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and WINTER and HALL, Circuit Judges.

WINTER, Circuit Judge:

Appellants are three black men who, originally sentenced to death, are currently serving life sentences resulting from their North Carolina convictions, pursuant to N.C.Gen.Stat. § 14–21 (1977 Cum.Supp.),[1] for first degree rape of a white woman. In their petition for federal habeas corpus relief, they alleged two principal constitutional errors in their convictions: first, that the trial court's insistence that one attorney represent all three defendants deprived them, because of conflicts among them, of the effective assistance of counsel, and second, that the racially inflammatory remarks in the prosecutor's closing argument before an all-white jury were so prejudicial as to make a fair trial impossible. The district court considered both claims to be without merit and denied relief.

■ We grant a certificate of probable cause and reverse. In our view, the prosecutor's summation, by deliberately injecting the issue of race into what was necessarily a racially sensitive prosecution, so infected the trial with unfairness as to deny appellants due process of law. Because we con-clude that the prosecutor's argument invalidated the trial, we find it unnecessary to address appellants' contentions concerning the effectiveness of their representation.[2] We direct that unless appellants are afforded a new trial, the writ should issue.

### I.

We need state the facts relating to appellants' rape convictions only succinctly; they are stated more fully in the opinion of the Supreme Court of North Carolina which found no error in the convictions. *See State v. Miller,* 288 N.C. 582, 220 S.E.2d 326 (1975).

Deborah Case and her boyfriend, Michael Stumphey, hitchhiked to North Carolina so that they might attend a rock festival that was to be held in Charlotte on August 10, 1974. After arriving in Charlotte on August 9, however, the couple changed their plans, deciding to skip the concert and instead to travel to Colorado where they intended to get married. On the morning of August 10 they headed west. Shortly after starting, they accepted a ride in a car occupied by three black men, the appellants in this case. Once in route, the driver told them that he would take them as far as Hickory but that he first had to stop and see someone. On that supposed errand, he left the interstate and drove to the end of a remote country road. There, while Michael was held at bay at the point of a pistol, Deborah, allegedly at the point of a knife, was required to submit to sexual intercourse with each of the appellants in turn.

Later, Deborah and Michael were driven back to the interstate, where they were permitted to leave the car. They promptly hailed a state policeman. Acting on information supplied by the couple and others, the police arrested the appellants that same day and charged them with rape.

1. Every person who ravishes and carnally knows any female of the age of 12 years or more by force and against her will . . . shall be guilty of rape . . . .
   (1) First-Degree Rape—
      (b) If the person guilty of rape is more than 16 years of age, and the rape victim had her resistance overcome or her submission procured by the use of a deadly weapon . . . the punishment shall be death.

2. In the event that North Carolina affords appellants a new trial, any issue of their continued joint representation should be resolved in the light of *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

The state's case consisted chiefly of the testimony of Michael and Deborah. Each identified the three appellants as the occupants of the car and each testified to the use of the threat of force, although only Deborah could speak to the details of the assaults. Their identification of the appellants was corroborated by James Franklin, a hunter who had encountered the five of them while the car was parked at the end of the road. None of the defendants testified or offered any evidence in opposition to the state's case. From the tenor of the cross-examination, however, it was evident that the theory of the defense was that Deborah had consented to sexual intercourse with the defendants. The defense did elicit testimony that Deborah and Michael entered the car willingly and made no request to get out, that Deborah had previously engaged in acts of sexual intercourse, that both had taken drugs before the incident, that Deborah had no injuries other than a small bruise, and that she had offered no physical resistance during the several acts of sexual intercourse with appellants.

During closing arguments, the trial judge was not present on the bench. Under North Carolina practice, counsel for defendants had the opening and closing arguments. While counsel's opening argument was not transcribed, he apparently urged a theory of consent. In reply, the prosecutor made references to the defendants' race. He repeatedly referred to the defendants as "these black men" and ultimately argued

that a defense based on consent was inherently untenable because no white woman would ever consent to having sexual relations with a black:

> Don't you know and I argue if that [i. e. consent] was the case she could not come in this courtroom and relate the story that she has from this stand to you good people, because I argue to you that the average white woman abhors anything of this type in nature that had to do with a black man. It is innate within us, . . . .[3]

No objection was voiced to the prosecutor's arguments nor was any attempt made to recall the judge from chambers. Defense counsel also voiced no objection when the judge returned to court.

The defendants were all convicted and were initially sentenced to death, but a change in the law caused their sentences later to be reduced to life imprisonment. An unsuccessful appeal was taken to the North Carolina Supreme Court. *State v. Miller, supra.* Briefs filed in that appeal urged reversal on several grounds; chief among them was that the prosecutor's remarks were so prejudicial as to constitute reversible error.

While the seven-member court was unanimous in affirming the convictions, the court split on the reasons for affirmance with respect to the prosecutor's argument. The opinion of the court, written by Justice Huskins, in which two other justices concurred completely and a third justice con-

---

**3.** In addition to describing how she was threatened with a knife, Deborah testified that she was in her menstrual period when the alleged assaults occurred. The prosecutor argued that this was another reason why the jury should find the lack of consent, but again he did not refrain from invoking the defendants' race:

> [I]f she was a mind to consent to intercourse, don't you know as reasonable men and women she was not going to consent whenever she was having her menstrual cycle. I argue to you that a person, white or black or yellow or any other color under the sun that would have intercourse with a woman during the time of her menstrual cycle is on the level of an animal, and only a person that would have such a deep desire to carry out the sex desire that he would do a thing

like that. She told you that each of these black men had intercourse with her and that they passed the knife from one to another.

The prosecutor's summation was noteworthy not only for its statements about race. Quoting from Romans 13, he informed the jury that the law enforcement powers of the district attorney come from God and that to resist those powers was to resist God. Although appellants raise no objection to these remarks, we cannot fail to notice that our government derives its authority from the people whom it is to govern, not from its identification with any particular creed. While an objective of our system of criminal law is to produce a just and moral society as well as an orderly one, a prosecutor is only a secular officer fulfilling a secular function.

curred in part, assigned alternative grounds for decision: that the error was harmless because the evidence against the defendants was overwhelming, and that the failure of counsel to object to the argument waived the point for purposes of review.[4] In holding that the prosecutor's argument was harmless error, the majority expressed mild disapproval of the argument's content. Chief Justice Sharp's concurring opinion, joined by two other justices of the court, rested solely on the assertion that the error was harmless, but it characterized the prosecutor's argument as "an egregious blunder" which in a less one-sided case would have required a new trial. 220 S.E.2d at 341. The seventh justice who concurred mostly in the majority opinion wrote separately to express his view that no criticism of the prosecutor was justified because the remarks were not prejudicial since they simply stated a matter of common knowledge.

The appellants next brought this habeas corpus petition repeating the allegations that had been made in the state appeal. The district court denied relief. On the question of the prosecutor's remarks, it held, alternatively, that the failure to object constituted a waiver, that the remarks were not prejudicial, and that, if prejudicial, they were harmless beyond a reasonable doubt. This appeal followed.

## II.

Before addressing the merits of appellants' contentions regarding the prosecutor's summation, we must first consider North Carolina's argument that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies to this case by virtue of defense counsel's failure to object to the prosecutor's summation at the time it was delivered and that it bars habeas relief on this issue. *Wainwright* holds that a state procedural waiver rule may supply a state ground of decision adequate to foreclose federal habeas relief, absent a showing of cause for the failure to comply with the state rule and of prejudice from the failure to object.

We reject the argument. While we have no doubt that *Wainwright* binds us in federal habeas corpus proceedings to the North Carolina procedural rule concerning the preservation of error in a North Carolina criminal proceeding, we think that the instant case falls within an exception to the general North Carolina rule barring review where there has been no objection. The exception, as we have mentioned in n. 4, *supra*, is that in a capital case "if argument of counsel . . . is so grossly improper that removal of its prejudicial effect, after a curative instruction, remains in doubt, the general rule requiring objection before verdict does not apply." 220 S.E.2d at 339. *Accord: State v. White*, 286 N.C. 395, 211 S.E.2d 445 (1975); *State v. Williams*, 276 N.C. 703, 174 S.E.2d 503 (1970); *rev'd on other grounds*, 403 U.S. 948, 91 S.Ct. 2290, 29 L.Ed.2d 860 (1971); *State v. Miller*, 271 N.C. 646, 157 S.E.2d 335 (1967). Under this rule the first attention of the reviewing court is to consider if the challenged argument was improper and, if so, whether it was improper to the extent that doubt remains as to whether a curative instruction would remove its prejudicial effect. If a convicted defendant was so prejudiced, the failure to object is no bar and his claim may be decided on the merits. If, on the other hand, it can be said that the argument was not prejudicial or that a curative instruction would have removed any prejudice, his failure to object to the argument is treated as a bar to appellate relief. Thus, application of this exception entails an inquiry by the reviewing court into the merits of the claim; waiver is not automatic. This was

---

4. The two grounds of decision were not truly independent of one another because, citing settled North Carolina authority, the court said, "if argument of counsel in a capital case is so grossly improper that removal of its prejudicial effect, after a curative instruction, remains in doubt, the general rule requiring objection before verdict does not apply." 220 S.E.2d at 339. At the time that appellants' case was tried and decided on appeal, it was a capital case.

the pattern of reasoning of the North Carolina Supreme Court in the instant case.[5]

■ In the instant case, the North Carolina Supreme Court, while disapproving the prosecutor's choice of language, concluded that its use "in light of the facts and circumstances disclosed by the record" did not constitute prejudicial error requiring a new trial. The court added that the evidence of guilt was overwhelming and there was no reasonable basis on which to conclude that appellants would not have been convicted if the challenged argument had been entirely omitted. 220 S.E.2d 339. As we shall show, we are in disagreement with both of these conclusions. We think that there was prejudicial error of sufficient magnitude that even after a curative instruction there would remain doubt as to whether the prejudice was removed. Because the capital case exception to North Carolina's contemporaneous objection rule entails analysis both as to the degree of prejudice and to the consequences of the failure to object, ·we think that we too are authorized to consider the merits.

### III.

■ We therefore turn to the merits of appellants' argument that the racial remarks of the prosecutor so prejudiced their trial as to deny them due process of law as guaranteed by the fourteenth amendment. The standard by which such claims are evaluated is a stringent one. Due process is not violated unless the error constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166

(1941)). We think the prosecutorial misconduct in the instant case rose to that level.

■ Nothing is more fundamental to the provision of a fair trial than the right to an impartial jury. *See Aston v. Warden*, 574 F.2d 1169, 1172 (4 Cir. 1978). The impartiality of the jury must exist at the outset of the trial and it must be preserved throughout the entire trial. The device of *voir dire* and the right to strike prospective jurors, both peremptorily and for cause, are the means by which an impartial jury is seated in the box. Thereafter, the law guarantees that every defendant may have his case decided strictly according to the evidence presented, not by extraneous matters or by the predilections of individual jurors. The law has developed an elaborate body of the law of evidence, the overall purpose of which is to restrict the deliberations of jurors to that which is trustworthy, probative and relevant. Where evidence is relevant but also prejudicial, the law requires that it not be received until it has been demonstrated that its relevance and probative value outweigh its collateral prejudicial effect. Thus, the objective of a fair trial is sought to be achieved.

■ A prejudicial argument by the prosecutor poses a serious threat to a fair trial. Not only does it undermine the jury's impartiality, but it also disregards the prosecutor's responsibility as a public officer. *Berger v. United States*, 295 U.S. 78, 85, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).[6] Judge Jerome Frank's trenchant dissenting opinion in *United States v. Antonelli Fireworks Co.*, 155 F.2d 631 (2 Cir. 1946), a case where the prosecutor appealed to the jury's sense of patriotism in a wartime prosecution, explains why such arguments are so objectionable.[7]

---

5. By contrast, in *Wainright* the state appellate courts had refused to review the petitioner's claim on the merits because of a waiver rule. The Supreme Court emphasized that state court interpretation of procedural rules was to be given considerable weight.

6. The ABA Project on Standards for Criminal Justice, The Prosecution Function, § 5–8(c) (1974), succinctly describes the prosecutor's responsibilities in preserving the jury's impartial-

ity: "The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury."

7. A jury trial, at best, is chancy. "Mr. Prejudice and Miss Sympathy are the names of witnesses whose testimony is not recorded, but must nevertheless be reckoned with * * *";  and most jurors have no trained capacity for doing so. A keen observer has said that "next to perjury, prejudice is the main cause of mis-

Concern about fairness should be especially acute where a prosecutor's argument appeals to race prejudice in the context of a sexual crime, for few forms of prejudice are so virulent. Moreover, an appeal to racial prejudice impugns the concept of equal protection of the laws. One of the animating purposes of the equal protection clause of the fourteenth amendment, and a continuing principle of its jurisprudence, is the eradication of racial considerations from criminal proceedings. *See United States ex rel. Haynes v. McKendrick*, 481 F.2d 152, 158–59 (2 Cir. 1973). We agree with Judge Oakes, the author of *Haynes*, that "the purpose and spirit of the fourteenth amendment requires that prosecutions in state courts be free of racially prejudicial slurs in argument." 481 F.2d at 159.

On the facts as disclosed by this record, we are persuaded that the prosecutor's remarks so infected the proceeding as to deny appellants due process of law. Other courts have reached a similar conclusion where a prosecutor has made racially prejudicial comments, *see Kelly v. Stone*, 514 F.2d 18 (2 Cir. 1975); *Haynes, supra; see generally* Annot., 45 A.L.R.2d 303, 322–68 (1956). Of course where the legal standard is simply one of fairness, the resolution of each case must depend on its facts. There may be cases where a disputed remark is arguably not prejudicial or where it is plainly insignificant. There may also be instances where the curative instructions of the trial judge are so immediate and decisive that the prejudicial effects of the argument are effectively dispelled. But we see no saving features in the instant case. Here the comments were unquestionably prejudicial, and they related to the crucial issue of whether there was consent. Even if this were a case where prejudice could be dispelled by cura-

tive instructions, the efficacy of curative instructions is not in issue since none were given. We therefore hold that the prejudicial effects of the prosecutor's argument deprived appellants of their constitutional right to a fair trial.

## IV.

There remains only the question of whether this constitutional deprivation was harmless error. In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court observed that there might be some errors of constitutional magnitude that might, in a particular case, be so unimportant and insignificant as to be harmless. An error could not be so classified, however, unless the reviewing court were able to say, beyond a reasonable doubt, that there was no reasonable possibility that the disputed evidence might have contributed to the conviction. 386 U.S. at 23–24, 87 S.Ct. 824. And the Court recognized that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." 386 U.S. at 23, 87 S.Ct. at 827. We do not think that there was harmless error in the instant case.

First, we cannot say beyond a reasonable doubt that the improper argument did not contribute to the convictions. The defense of consent admittedly was not a strong one. Yet by the same token, it was not frivolous. The evidence that the victim willingly entered the car, that she did not protest the deviation, that she and her male companion (to whom she was not then married) had consumed drugs, and that she was ńot inexperienced in sexual activity might have led the jury either to find consent or to deadlock on the issue of consent.[8] The blatant

carriages of justice." If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice. Law suits, do what we will, are hazardous: A missing witness, a lost document—these and numerous other fortuitous factors may result in

a man's losing his life, liberty or property unjustly. When the government puts a citizen to the hazards of a criminal jury trial, a government attorney should not be allowed to increase those hazards unfairly.
155 F.2d at 658–59 (citations omitted).

8. The court in *Miller* remarked, after a more detailed statement of the facts: "counsel [for defendants] undoubtedly argued with vigor and

appeal to racial prejudice in the assertion that no white woman would consent to sexual intercourse with a black man could not have had an insubstantial effect on the jury's verdict were it otherwise disposed to be persuaded by the defense.

■ Second, we incline to the view that the instant case falls into the category of constitutional violations to which, as *Chapman* recognizes, the harmless error rule does not apply. When the error is a coerced confession, denial of counsel, or lack of an impartial judge—the examples cited in *Chapman*, 386 U.S. at 23, n. 8, 87 S.Ct. 824—the error infects the entire proceeding making it impossible to evaluate the effect of the error on the jury. As a consequence, with such errors reversal is automatic. *See Chapman, supra*, 386 U.S. at 23 n. 8, 87 S.Ct. 824; Mause, *Harmless Constitutional Error: The Implications of Chapman v. California*, 53 Minn.L.Rev. 519, 540–47 (1969); Note, *Harmless Constitutional Error: A Reappraisal*, 83 Harv.L.Rev. 814, 820–24 (1970).

■ Where the jury is exposed to highly prejudicial argument by the prosecutor's calculated resort to racial prejudice on an issue as sensitive as consent to sexual intercourse in a prosecution for rape, we think that the prejudice engendered is so great that automatic reversal is required. In such a case, the impartiality of the jury as a fact-finder is fatally compromised. Because that contamination may affect the jury's evaluation of all of the evidence before it, speculation about the effect of the error on the verdict is fruitless. Reversal must be automatic. *See Haynes, supra*, 481 F.2d at 161; Mause, *supra*, 53 Minn.L.Rev. at 541–42.

For these reasons, the judgment of the district court is reversed and the case is remanded with directions to the district court to issue the writ unless North Carolina shall afford the appellants a new trial within such reasonable period as the district court shall prescribe.

*REVERSED AND REMANDED.*

conviction that Deborah was essentially a hippie prostitute who offered no resistance when

approached by defendants seeking sexual favors." 220 S.E.2d at 339.