854 F.2d 1316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Maxie Rose CAHILL, Alden Lee Cahill, Plaintiffs-Appellants,
v.
HCA MANAGEMENT COMPANY, INC., Defendant-Appellee.
 No. 87-3145.
 United States Court of Appeals, Fourth Circuit.
 Argued June 9, 1988.
Decided Aug. 5, 1988.
 
 Harold L. Kennedy, III (Annie Brown Kennedy, Harvey L. Kennedy, Kennedy, Kennedy, Kennedy and Kennedy on brief) for appellants.
 Thomas Gene Smith (W. Harold Mitchell, Mitchell, Blackwell, Mitchell & Smith, P.A. on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, K.K. HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Maxie Rose Cahill and Alden Lee Cahill ("the Cahills") appeal the jury verdict in favor of HCA Management Co., Inc. ("HCA"), upon their claim that HCA was liable for the alleged negligence of a hospital technician who performed a venipuncture on Mrs. Cahill. We affirm.
 
 I.
 
 2
 On March 3, 1982, Mrs. Cahill was admitted to Ashe Memorial Hospital, Inc. ("AMH") for a partial mastectomy on her left breast. Prior to the surgery, on March 4, 1982, Henry Lum, a medical technician and employee of AMH, administered a venipuncture to Mrs. Cahill for the purpose of drawing blood for testing. According to Mrs. Cahill, Lum failed to inform her about the procedure, neglected either to place a tourniquet on her arm or to swab her arm with alcohol prior to insertion of the needle, and then roughly jabbed her wrist, causing her hand and arm to start "tremoring." Mrs. Cahill further claimed that she was released from the hospital following her breast surgery without receiving any treatment for her injury from the venipuncture. The Cahills' expert witness, Doctor Rose, testified that Mrs. Cahill suffers from post-traumatic stress disorder as a result of the venipuncture, and is permanently and totally disabled.
 
 
 3
 The case was last tried before a jury on August 19-21, 1987.[1] At the conclusion of the evidence, the jury found that Mrs. Cahill was not injured "as a proximate result of the negligence of Henry Lum."
 
 II.
 
 4
 On appeal, the Cahills argue that they were denied their right to a fair trial as a result of the trial court's adverse rulings on several evidentiary matters. Specifically, appellants contend that the court erred: (1) in admitting the opinion testimony of Dr. Davis, which was protected under North Carolina's statutory physician-patient privilege;[2] (2) in allowing Henry Lum to administer a venipuncture to defendant's counsel in the presence of the jury; (3) in admitting evidence of a similar state court action filed by appellants; and (4) in excluding the testimony of Elmo Powers. The Cahills further maintain that the defense counsel's tactics improperly appealed to the racial prejudices of the jury, entitling them to a new trial. After reviewing the record in this case, we find no grounds for reversal.
 
 
 5
 The North Carolina Supreme Court has declined to expressly hold that the physician-patient privilege is waived whenever a patient files a medical malpractice claim. The court has stated, however, that "[a] patient who discloses that which he has a right to keep confidential loses the right to claim the statute's protection." Cates v. Wilson, 361 S.E.2d 734 (N.C.1987). In the instant case, Dr. Davis, one of Mrs. Cahill's treating physicians, testified that the radial wrist area was an appropriate site to administer a venipuncture, and that it was an accepted risk for nerves to be struck by a needle when a venipuncture is performed. Since his testimony related to facts to which Mrs. Cahill previously testified, there was simply no disclosure of any confidential information and, thus, no violation of the privilege. The North Carolina statute enables "patients to use the privilege ... defensively to protect their confidences but [not] offensively to suppress the truth in litigation." Id.
 
 
 6
 We likewise see no reversible error in either the venipuncture demonstration performed by Lum on defense counsel or the revelation of a pending state action. While we strongly disapprove of defense counsel's participation in the demonstration, the evidence in this case overwhelmingly demonstrated that Lum was not negligent. No prejudice flowed from this event. Similarly, the testimony relating to a pending state court action, elicited from Mrs. Cahill on cross-examination, was, at most, harmless error. Although we question the relevance of this testimony, we are convinced that the jury rejected plaintiffs' claim on the basis that Lum did not breach the applicable standard of care, not because another lawsuit was pending.
 
 
 7
 We also have little trouble concluding that the district court acted within its discretion in excluding the rebuttal testimony of Elmo Powers. Powers' proffered testimony that Lum had performed venipunctures with "unnecessary roughness on occasion" (sic) related to events which occurred more than twenty years earlier, and, thus, was properly excluded as being too remote.
 
 
 8
 Finally, we find no merit in appellants' assertion that defense counsel's question relating to the race of one of Mrs. Cahill's treating physicians affected the impartiality of the jury, necessitating a new trial. At trial, the following exchange occurred between defense counsel and Mrs. Cahill concerning Dr. Carter:
 
 
 9
 Q: He's a black orthopedic surgeon?
 
 
 10
 Mr. Kennedy [Plaintiff's counsel]: Objection to his race. That's irrelevant.
 
 
 11
 The Court: Sustained.
 
 
 12
 While defense counsel's question was clearly improper, we are not persuaded "that the ... [defense counsel's] remarks so infected the proceeding as to deny appellants due process of law." See Miller v. State of N.C., 583 F.2d 701, 707 (4th Cir.1978). Plaintiff's objection was immediately sustained, and no further mention of Dr. Carter's, or anyone else's race, occurred throughout the trial.
 
 III.
 
 13
 Accordingly, the judgment of the district court is affirmed.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 This case is before this Court for the second time. On January 27, 1986, the first trial ended in a directed verdict in favor of the defendant, HCA, when the district court ruled that HCA could not be held liable under a theory of respondeat superior, because AMH and not HCA was the employer of Lum. This Court reversed on appeal. See Cahill v. HCA Management Co., Inc., 812 F.2d 170 (4th Cir.1987)
 
 
 [2]
 See N.C.Gen.Stat. Sec. 8-53 (1987)