Statement of SOTOMAYOR, J.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

## BONGANI CHARLES CALHOUN *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 12–6142. Decided February 25, 2013

The petition for a writ of certiorari is denied.

Statement of JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, respecting the denial of the petition for writ of certiorari.

I write to dispel any doubt whether the Court's denial of certiorari should be understood to signal our tolerance of a federal prosecutor's racially charged remark. It should not.

Petitioner Bongani Charles Calhoun stood trial in a federal court in Texas for participating in a drug conspiracy. The primary issue was whether Calhoun knew that the friend he had accompanied on a road trip, along with the friend's associates, were about to engage in a drug transaction, or whether instead Calhoun was merely present during the group's drive home, when the others attempted to purchase cocaine from undercover Drug Enforcement Agency (DEA) agents. Two alleged co-conspirators who had pleaded guilty testified to Calhoun's knowledge. Law enforcement officers also testified that they discussed the drugs with Calhoun immediately before they broke cover to arrest the group, and that Calhoun had a gun when he was arrested. In his defense, Calhoun testified that he was not part of and had no knowledge of his friend's plan to purchase drugs, that he did not understand the DEA agents when they spoke to him in Spanish only, and that he always carried a concealed firearm, as he

was licensed to do. It was up to the jurors to decide whom
they believed.

The issue of Calhoun's intent came to a head when the pros-
ecutor cross-examined him. Calhoun related that the
night before the arrest, he had detached himself from the
group when his friend arrived at their hotel room with a
bag of money. He stated that he "didn't know" what was
happening, and that it "made me think . . . [t]hat I didn't
want to be there." Tr. 125–126 (Mar. 8, 2011). (Calhoun
had previously testified that he rejoined the group the
next morning because he thought they were finally return-
ing home. *Id.,* at 109.) The prosecutor pressed Calhoun
repeatedly to explain why he did not want to be in the
hotel room. Eventually, the District Judge told the prose-
cutor to move on. That is when the prosecutor asked,
"You've got African-Americans, you've got Hispanics,
you've got a bag full of money. Does that tell you—a light bulb
doesn't go off in your head and say, This is a drug deal?"
*Id.,* at 127.

Calhoun, who is African-American, claims that the
prosecutor's racially charged question violated his consti-
tutional rights. Inexplicably, however, Calhoun's counsel
did not object to the question at trial. So Calhoun's chal-
lenge comes to us on plain-error review, under which he
would ordinarily have to "demonstrate that [the error]
'affected the outcome of the district court proceedings.'"
*Puckett* v. *United States*, 556 U. S. 129, 135 (2009) (quot-
ing *United States* v. *Olano*, 507 U. S. 725, 734 (1993)). Yet
in his petition for writ of certiorari, Calhoun does not
attempt to make that showing. Instead, Calhoun contends
that the comment should lead to automatic reversal be-
cause it constitutes either structural error or plain error
regardless of whether it prejudiced the outcome. Those
arguments, however, were forfeited when Calhoun failed
to press them on appeal to the Fifth Circuit. Given this
posture, and the unusual way in which this case has been

litigated, I do not disagree with the Court's decision to deny the petition.*

There is no doubt, however, that the prosecutor's question never should have been posed. "The Constitution prohibits racially biased prosecutorial arguments." *McCleskey* v. *Kemp*, 481 U. S. 279, 309, n. 30 (1987). Such argumentation is an affront to the Constitution's guarantee of equal protection of the laws. And by threatening to cultivate bias in the jury, it equally offends the defendant's right to an impartial jury. Judge Frank put the point well: "If government counsel in a criminal suit is allowed to inflame the jurors by irrelevantly arousing their deepest prejudices, the jury may become in his hands a lethal weapon directed against defendants who may be innocent. He should not be permitted to summon that thirteenth juror, prejudice." *United States* v. *Antonelli Fireworks Co.*, 155 F. 2d 631, 659 (CA2 1946) (dissenting opinion) (footnote omitted). Thus it is a settled professional standard that a "prosecutor should not make arguments calculated to appeal to the prejudices of the jury." ABA Standards for Criminal Justice, Prosecution Function and Defense Function, Standard 3–5.8(c), p. 106 (3d ed. 1993).

By suggesting that race should play a role in establishing a defendant's criminal intent, the prosecutor here

―――――――

*The prosecutor's comment was not an isolated one, but Calhoun similarly failed to challenge the reprise. During defense counsel's closing argument, counsel belatedly criticized the prosecutor's question. On rebuttal, the prosecutor responded: "I got accused by [defense counsel] of, I guess, racially, ethnically profiling people when I asked the question of Mr. Calhoun, Okay, you got African-American[s] and Hispanics, do you think it's a drug deal? But there's one element that's missing. The money. So what are they doing in this room with a bag full of money? What does your common sense tell you that these people are doing in a hotel room with a bag full of money, cash? None of these people are Bill Gates or computer [magnates]? None of them are real estate investors." Tr. 167–168 (Mar. 8, 2011).

tapped a deep and sorry vein of racial prejudice that has run through the history of criminal justice in our Nation. There was a time when appeals to race were not uncommon, when a prosecutor might direct a jury to "'consider the fact that Mary Sue Rowe is a young white woman and that this defendant is a black man for the purpose of determining his intent at the time he entered Mrs. Rowe's home,'" *Holland* v. *State*, 247 Ala. 53, 22 So. 2d 519, 520 (1945), or assure a jury that "'I am well enough acquainted with this class of niggers to know that they have got it in for the [white] race in their heart,'" *Taylor* v. *State*, 50 Tex. Crim. 560, 561, 100 S. W. 393 (1907). The prosecutor's comment here was surely less extreme. But it too was pernicious in its attempt to substitute racial stereotype for evidence, and racial prejudice for reason.

It is deeply disappointing to see a representative of the United States resort to this base tactic more than a decade into the 21st century. Such conduct diminishes the dignity of our criminal justice system and undermines respect for the rule of law. We expect the Government to seek justice, not to fan the flames of fear and prejudice. In discharging the duties of his office in this case, the Assistant United States Attorney for the Western District of Texas missed the mark.

Also troubling are the Government's actions on appeal. Before the Fifth Circuit, the Government failed to recognize the wrongfulness of the prosecutor's question, instead calling it only "impolitic" and arguing that "even assuming the question crossed the line," it did not prejudice the outcome. Brief for United States in No. 11–50605, pp. 19, 20. This prompted Judge Haynes to "clear up any confusion—the question crossed the line." 478 Fed. Appx. 193, 196 (CA5 2012) (concurring opinion). In this Court, the Solicitor General has more appropriately conceded that the "prosecutor's racial remark was unquestionably improper." Brief in Opposition 7–8. Yet this belated ac-

knowledgment came only after the Solicitor General waived the Government's response to the petition at first, leaving the Court to direct a response.

I hope never to see a case like this again.