# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47907

STATE OF IDAHO,

  Plaintiff-Respondent,

v.

MICHAEL SHAWN SOUTH,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: May 20, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Fred Gibler, District Judge.

Judgment of conviction for aggravated assault, battery, and malicious injury to property, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Michael Shawn South appeals from his judgment of conviction for aggravated assault, Idaho Code § 18-905; battery, I.C. § 18-903; and misdemeanor malicious injury to property, I.C. § 18-7001. South argues the prosecutor committed misconduct during rebuttal closing argument. We disagree and affirm the judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2019, South was arrested after entering a residence and threatening the victim. The State eventually charged South with aggravated assault, battery, and malicious injury to property. South pled not guilty, and the case proceeded to trial. At trial, the evidence showed the victim and South had been in a romantic relationship and were living in Montana. The

1

victim decided to leave South, however, and called a friend, R.O., to pick up the victim in Montana. She then stayed with R.O. and his wife at their home in rural Kootenai County.

On March 8, the victim and South communicated and arranged for South to pick her up at the end of the road leading to R.O.'s home. South did not pick her up as planned, however. Sometime later that night or early the next morning, the victim and R.O. were sitting at the dining room table talking when South walked into the room after entering R.O.'s home, without permission, through an unlocked door. R.O. testified South's presence "startled" him; similarly, the victim testified South "surprised" her.

South demanded that the victim leave with him. When the victim refused to leave, she and South went to her bedroom to talk. According to the victim's testimony, she detected the smell of alcohol on South and during the conversation he became loud and angry. He backhanded the victim in the mouth, splitting her bottom lip. He also pulled a knife out of a sheath tucked into his waistband; pointed it at the victim's neck; and said, "I killed seventeen people. Why the f--- should I let you live?" The victim testified, "I was afraid he was going to kill me."

Upon hearing loud voices and after South had re-sheathed his knife, R.O. entered the victim's bedroom and told South that he had to leave or R.O. would call the police. R.O. testified that in response South "told me that he would just slice and dice me." Similarly, the victim testified South said to R.O., "I'll slice and dice you, old man." South also pushed the victim backwards and punched holes in both the bedroom door and the closet door.

When R.O. left the victim's bedroom to retrieve his phone from his vehicle, South followed him outside. After retrieving his phone, R.O. returned to the home, locked South out, and called 911. During this time, the victim told South she would leave with him and grabbed her coat, but she did not leave. While R.O. was on the phone with 911, South was locked outside the home banging on the door and shouting loudly, including shouting "murder" repeatedly.

Eventually, the police arrived and located South hiding in R.O.'s snowbound vehicle, which was parked near the home. Although the police did not locate a knife on South that night, several days later R.O. found a knife underneath the vehicle, and the victim identified the knife as the one South had pointed at her.

At trial, the State presented the testimony of the victim, R.O., the officer who found South hiding in the vehicle, R.O.'s friend who lives on R.O.'s property and was with him when

2

he found the knife under the vehicle, and the officer who retrieved the knife from under the vehicle. Additionally, the State admitted a transcript of R.O.'s 911 call and numerous photographs, which included the victim's injury, the holes in the doors, and the knife under the vehicle.

During rebuttal closing argument, the prosecutor commented on the victim's relationship with South:

> [The victim is] scared to death of [South]. Of course she's going to go with him. She is going to do what he says because that's what you have to do when you're in a relationship with Michael South. Because he likes to play with knives. He likes to break into people's homes.

South's counsel objected to these comments stating, "That's not what the evidence has shown," and the district court overruled the objection stating, "Well, it's fair argument based upon on the inferences."

Ultimately, the jury found South guilty on all counts, and South timely appeals the judgment of conviction.

## II.

## STANDARD OF REVIEW

South's sole argument on appeal is that the prosecutor committed misconduct during rebuttal closing argument when he stated South "likes to play with knives" and "likes to break into people's homes." When a defendant has made a contemporaneous objection to alleged prosecutorial misconduct, we first determine factually if prosecutorial misconduct occurred and, if so, whether the error was harmless. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Phillips*, 144 Idaho 82, 88, 156 P.3d 583, 589 (Ct. App. 2007). Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). Where a criminal defendant shows an error based on a contemporaneously objected-to nonconstitutional violation, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt the error did not contribute to the jury's verdict. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). Thus, we examine whether the alleged error complained of in the present case was harmless. *See id.* "Harmless error is 'error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.'" *State v. Garcia*, 166 Idaho 661, 674, 462 P.3d 1125, 1138 (2020) (quoting *Yates v. Evatt*, 500 U.S. 391, 403 (1991)). This standard "requires weighing the

3

probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error." *Id.* If the error's effect is minimal compared to the probative force of the record establishing guilt beyond a reasonable doubt without the error, then the error did not contribute to the verdict rendered and is harmless. *Id.* The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946). We will not set aside a conviction for small errors or defects having little, if any, likelihood of impacting the trial's results. *State v. Baker*, 161 Idaho 289, 299, 385 P.3d 467, 477 (Ct. App. 2016).

## III.

## ANALYSIS

Although our system of criminal justice is adversarial in nature and the prosecutor is expected to be diligent and to leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *Field*, 144 Idaho at 571, 165 P.3d at 285. The prosecutor has a duty to avoid misrepresenting the facts and using unnecessarily inflammatory tactics. *State v. Miller*, 165 Idaho 115, 122, 443 P.3d 129, 136 (2019); *Field*, 144 Idaho at 571, 165 P.3d at 285. In reviewing allegations of prosecutorial misconduct, however, we must keep in mind the realities of trial. *Field*, 144 Idaho at 571, 165 P.3d at 285. A fair trial is not necessarily a perfect trial. *Id.*

Closing argument serves to sharpen and to clarify the issues for resolution by the jury in a criminal case. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Its purpose is to enlighten the jury and to help the jurors remember and to interpret the evidence. *Id.* Both parties have traditionally been afforded considerable latitude in closing argument to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *Id.* "Considerable latitude, however, has its limits, both in matters expressly stated and those implied." *Id.* For example, a closing argument may not misrepresent or mischaracterize the evidence, unduly emphasize irrelevant facts introduced at trial, or refer to facts not in evidence. *Id.* Appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible. *Id.* at 87, 156 P.3d at 588.

4

In this case, South makes several arguments challenging the prosecutor's comments that South "likes to play with knives" and "likes to break into people's homes." None of these arguments are persuasive. First, South argues no evidence suggested that he "likes to 'play with knives'" or that he broke into R.O.'s or anyone else's home. In support, South notes the evidence showed that the door to R.O.'s home through which South entered was unlocked and that he only "drew the knife, displayed it, and re-sheathed it" on "one occasion," which did not "suggest[] South was 'playing with knives' much less that he *likes* to do so."

We disagree with South's argument that the evidence does not support the comments and conclude that the comments, albeit sarcastic, are fair inferences from the evidence. This evidence included that South entered R.O.'s home on the night in question without permission and startled and surprised both R.O. and the victim. While in the home and holding a knife, South claimed to have killed seventeen people, pointed the knife at the victim's throat, questioned why he should let her live, caused her to think he was going to kill her, and threatened to "slice and dice" R.O. Then, without permission, South entered and hid in R.O.'s vehicle and also hid the knife under it. While certainly nothing is playful about South's conduct, the evidence supports the gist of the prosecutor's comments that South entered places without permission and also threatened both to injure and to kill people with a knife.

Second, South argues the prosecutor's comments "essentially amount[ed] to improper propensity arguments" and created a "significant risk" that the jury "improperly considered [South's] misrepresented character in resolving the credibility issue at the center of this case." This argument fails for several reasons. The district court specifically instructed the jury that "the arguments and statements of the attorneys are not evidence." We presume the jury followed this instruction. *State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997) (presuming jury followed district court's instruction); *see also State v. Alwin*, 164 Idaho 160, 169, 426 P.3d 1260, 1269 (2018) (ruling misconduct may be remedied by district court's instruction that attorneys' comments are not evidence). South did not object to the prosecutor's comments as "improper propensity evidence;" rather, his objection was "[t]hat's not what the evidence has shown." *Cf. State v. Hall*, 163 Idaho 744, 772-73, 419 P.3d 1042, 1070-71 (2018) (holding objection to admission of evidence on one basis does not preserve a separate and different basis for excluding evidence). Although South argues the prosecutor's comments urged the jury to consider South's "misrepresented character" to resolve a "credibility issue at the

5

center of the case," South fails to identify what that credibility issue was. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (ruling party waives issue on appeal if either authority or argument is lacking). Regardless, "[p]rosecutors are entitled to ask jurors to draw inferences from the trial evidence, including inferences about a witness's credibility." *State v. Jackson*, 151 Idaho 376, 381, 256 P.3d 784, 789 (Ct. App. 2011). We agree with the State that South's characterization of the prosecutor's comments as suggesting that South had broken into other houses on other occasions improperly construes the comments to have their most damaging meaning. We decline, however, to "lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647 (1974)).

Third, South argues the prosecutor's challenged comments "reinforced" that "the jury heard [R.O.] describe [South] as having 'Neo-Nazi bolt tattoos' on his neck." This argument relates to R.O.'s description of South on the first day of trial when the prosecutor asked R.O. to identify South, and R.O. testified South had "Neo-Nazi bolt tattoos on his neck." South's counsel objected to this testimony; the district court sustained the objection and instructed the jury to "disregard that last statement"; and South did not lodge any further objection or request any other relief. Regardless, on appeal, South argues "the instruction . . . was particularly lacking because it implicitly confirmed [South] had such tattoos when he did not." Because the court sustained South's objection and instructed the jury to disregard R.O.'s offending description, the testimony cannot be the basis of an appellate challenge either standing alone or in conjunction with the prosecutor's closing comments. *See State v. Dougherty*, 142 Idaho 1, 6, 121 P.3d 416, 421 (Ct. App. 2005) (declining to review challenge to comments to which court sustained objection and instructed jury); *see also State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008) (ruling record must reveal adverse ruling forming basis of assignment of error).

Fourth, South quotes the special concurrence in *Phillips* to argue the prosecutor's challenged comments are "the latest example in what has been recognized as a 'long line or pattern of repetitious misconduct from [the Kootenai County] prosecutorial office.'" *Phillips*, 144 Idaho at 89, 156 P.3d at 590 (J. Schwartzman, specially concurring). Additionally, South

cites *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) (addressing appeal from Twin Falls County). In *Guzman*, the Idaho Supreme Court states in a footnote that "mistakes must not become the practice instead of the exception. A court on observing that a pattern of mistakes has developed, on seeing yet another 'mistake,' might readily decide to view such circumstance with a jaundiced eye, and rule accordingly." *Id.* at 984 n.1, 842 P.2d 663 n.1. Finally, in support of his assertion of "repetitive misconduct" in the Kootenai County prosecutor's office, South generally cites seven appellate cases from Kootenai County raising issues of prosecutorial misconduct in the last fourteen years since the concurrence in *Phillips*.

South's assertion of repetitive prosecutorial misconduct in the Kootenai County prosecutor's office is unpersuasive. Moreover, neither the concurrence in *Phillips* nor the footnote in *Guzman* stand for the proposition that appellate counsel may attempt to identify a pattern of repetitive prosecutorial misconduct in order to seek relief for a particular criminal defendant. Rather, the comments in *Phillips* and *Guzman* are more aptly described as warnings by those appellate courts that they may view repeated "mistakes" with "a jaundiced eye" and rule accordingly. *Guzman*, 122 Idaho at 984 n.1, 842 P.2d at 663 n.1. This Court, however, declines to rely on counsel's conduct in other cases to grant relief in this case, as South urges.

Finally, South argues that even if the prosecutor did not intend to commit misconduct, his comments were still improper. In support, South relies on *State v. Kirk*, 157 Idaho 809, 339 P.3d 1213 (Ct. App. 2014). That case, however, is distinguishable. In *Kirk*, the prosecutor recited a verse of the song "Dixie" during the closing argument in the trial of an African American defendant accused of sexually molesting minors. *Id.* at 811, 339 P.3d at 1215. On appeal, Kirk argued the State violated his constitutional rights by injecting the risk of racial prejudice into his case. *Id.* This Court noted that "the injection of racial considerations in closing arguments casts doubt on the integrity of the judicial process and impairs the confidence of the public in the administration of justice." *Id.* at 814, 339 P.3d at 1218 (quotations omitted). Applying the fundamental error test, this Court ruled that given the sensitive nature of the sexual molestation case against Kirk involving minors and considering the totality of evidence and trial proceedings, Kirk demonstrated "a reasonable possibility (or likelihood) that the error affected the outcome of the trial." *Id.* at 815, 339 P.3d at 1219.

In contrast to *Kirk*, the prosecutor's comments in this case did not appeal to racial or any other prejudice, nor were they made in the context of a criminal charge such as sexual

molestation, which may evoke virulent prejudice. *See id.* (noting "concern about fairness should be especially acute where a prosecutor's argument appeals to race prejudice in the context of a sexual crime, for few forms of prejudice are so virulent" (brackets and quotations omitted)). Rather, the prosecutor's comments in this case, while sarcastic, were based on an inference from the evidence that South used his knife to threaten the victim and R.O. and entered R.O.'s home without permission. Under these circumstances, the prosecutor's comments did not constitute misconduct.

Moreover, even if the comments were misconduct, the error was harmless. As noted above, the State's evidence included, for example, that South entered R.O.'s residence without permission, struck the victim splitting her lip, threatened her with a knife, pushed her, threatened to "slice and dice" R.O., and punched holes in the bedroom and closet doors. In contrast to the probative force of this record, the prosecutor's comments were minimal and did not likely contribute to the jury's verdict. Further, the district court instructed the jury that closing statements are not evidence and that it should base its decision on the evidence presented at trial. We presume that the jury followed the district court's instructions. *See Kilby*, 130 Idaho at 751, 947 P.2d at 424; *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996).

### III.
### CONCLUSION

We hold that the prosecutor's comments did not constitute misconduct. Moreover, to the extent they did, any error was harmless. Accordingly, we affirm South's judgment of conviction.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.